Ranney, J.
Pour separate claims are made in this case to the fund brought into court by the executors of Urmey. It is claimed by the trustees of Jefferson and Madison townships, for the poor of those townships, under the provisions of the will; the widow claims it as next of kin; the brothers and sisters of Urmey as his heirs at law, he having left no legitimate child; and lastly, John Q. Urmey, his illegitimate son. The claim of the trustees is based upon the residuary clause in the will of Urmey, which is in these words : “ The remainder of my estate I do hereby give and devise to the poor and needy, fatherless, etc., of Jefferson and Madison townships,sof the county aforesaid; to such poor as are not able to support themselves, to be divided as my executors may deem proper without any partiality.” It is contended by them that this is a valid legal bequest for a legal, charitable, and meritorious object. This claim is resisted by all the other parties, and the bequest *141 is claimed to be “ utterly uncertain and indefinite as to thenbjects of the bequest, and, therefore, void.” If this bequest can be sustained, it disposes of the whole fund, and renders it unnecessary to consider the conflicting claims of the other parties ; and we are all of opinion that it is not of a character to require or authorize us to defeat the intention of the testator. Although the jurisdiction of courts of chancery over charitable bequests of this character has been the subject of much controversy, it seems to have been always agreed, from an early period in the Roman law to the present time, that such gifts are to receive a most liberal construction. 2 Story’s Eq. sec. 1139; 17 Serg. & Rawle, 88; 9 Ohio, 287; 20 Ohio, 483.
^Whatever might have been the course pursued by the courts of chancery in England prior to the passage of the statute of Charitable Uses, 43d of Elizabeth, which I do not propose to examine, it is unmistakably clear that since that time their whole jurisdiction has been regarded as resting upon it, and they have uniformly refused to interfere in cases not falling within its provisions. That statute has been construed with almost extravagant liberality, and it is not doubted that this case would fall within its provisions; but inasmuch as that statute is not in force here, it is hence inferred that our courts are invested with no such power. This consequence by no means follows. On the contrary, many of its principles have been long since incorporated into American jurisprudence, and enforced by the decisions of the highest and most enlightened courts. These decisions very conclusively settle the case under consideration. In the case of Witman v. Lex, 17 Serg. & Rawle, 88, the bequest was of a sum of money to two churches to lay out the interest annually in bread for the poor of the congregation. This bequest was sustained by Chief Justice Gibson in a very masterly opinion covering the whole ground. He arrived at the conclusion that it was immaterial whether the persons to take wTere in esse or not, or whether the church was then a corporation or not, or how uncertain the objects might be, provided there was a discretionary power vested anywhere over the application of the testator’s bounty to the objects intended—that if the intention sufficiently appeared in the bequest, it would be held valid. These principles were also enforced by the supreme court of the United States in the case of Ingliss v. The Sailors’ Snug Harbor, 3 Pet. 99, in which a bequest to the chancellor of New York, and others, in trust, to erect an asylum for the purpose *142 of supporting aged, decrepid, and worn out sailors, was sustained ; see also to the same purport, Moore’s Heirs v. Moore’s Devisees, 4 Dana, 355.
Our own court, in the case of The Trustees of the McIntyre Poor School v. The Zanesville Canal & Manufacturing Co., 9 *Ohio, 287, have been no less explicit. The devise in that case was for the purpose of establishing a school for-poor children within the the town of Zanesville. This devise was claimed to be void for uncertainty as to the objects intended, to be benefited. But the court sustained it, and remark that “ where a trust is’plainly defined and a trustee exist capable of holding the property and executing the trust, it has never been doubted that chancery has jurisdiction over it by its own inherent authority.”
In this case, the property is by the will expressly vested in the executors, and they are made trustees to apply the fund from time to time to relieve the necessities of the poor and needy in the townships named. The trustees exist to take and hold the property, and they are charged to seek out and apply it to the objects of the testator’s bounty. These objects are as clearly pointed out as the nature of the case will admit, and as little as possible left to the discretion of his trustees.
But if we were in doubt as to the doctrines of the adjudged cases, we certainly could not err in the light of our own legislation. By the 13th section of the act for the relief of the poor, passed in 1831, it is provided:
“ That all gifts, grants, devises, and bequests hereafter to bo made of any houses, lands, tenements, rents, goods, chattels, sum or sums of money to the poor of any township by deed, gift, or by the last will and testament of any person or persons, or otherwise, shall be good and valid in law; and shall pass such houses, lands, tenements, rents, goods, and chattels to the trustees of such townships and their successors in office, for the use of their poor respectively, under such regulations as shall from time to time be made by law.” Swan’s Stat. 637.
These provisions have been upon our statutes substantially since 1795. It can not be doubted that if this bequest had been made directly to the poor of the townships named, it would have taken effect under this section, and vested the property in the trustees of those townships in trust for the *use of the poor. To prevent a failure of these charitable bequests, the statute has designated a *143 trustee where none is named to hold and apply the fund. Just what the statute has done in such case the testator has himself done in this. It does not need, therefore, the aid of the statute. But it would certainly present a strange anomaly for the legislature to provide that the least certain of these bequests should “ be good and valid in law,” and this court at the same time held the more certain “utterly void.” Wherever the spirit and policy of our legislation leads, the judicial tribunals are bound to follow; and we think this consideration alone entirely decisive of this case.
It is suggested that the trustees in this case should be changed. The papers present no reason why this court should interfere with the appointment made by the testator himself. If, for any reason hereafter, the trust shall not be faithfully executed, the court of chancery in the county will possess full power to remedy the defect so as to carry into full effect the intention of the testator; for no trust can fail for the want of a trustee.
A decree can be taken upon these principles: